## EDMUND D. TAYLOR

*v.*

## JOHN W. BAILEY.

1. LANDLORD AND TENANT— *landlord not liable for damage caused by tenant's own negligence.* Where the water pipes in a building are of the proper size and properly constructed, a tenant occupying a room and hav-

ing the use of the pipes and water, and access to a crank by which to turn off the water to prevent freezing, and who neglects to turn off the same, whereby it freezes and bursts the pipe and damages his goods by leakage, cannot maintain an action against the landlord for damage, on account of his own negligence and want of ordinary care in not turning off the water when likely to freeze.

2.  SAME — *lease construed as to liability for leakage.*  A clause in a lease, exempting the landlord from liability for damage to the tenant by leakage of water, will not only be held to apply to leakage in the story or room occupied by the tenant, when it appears that the water pipes are in a room on a floor above and to which the tenant has access and agrees to keep in order, but will also apply to leakage from the pipes in such upper room

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. DENT & BLACK, for the appellant.

Messrs. McDAID, WILSON & PICHER, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court.

This was an action, on the case, brought by appellee, in the Superior Court of Cook county, against Edmund D. Taylor, to recover damages sustained upon a certain quantity of teas caused by leakage of water in a certain building occupied by appellee under a lease from Taylor, as a wholesale tea store.

A trial was had before a jury which resulted in a judgment in favor of appellee for $1,471.75.  The court overruled a motion for a new trial and rendered judgment upon the verdict, to reverse which the defendant, Taylor, has prosecuted this appeal.

It appears from the record that appellant formerly owned a double building in Chicago, arranged into two stores, known as No. 274 and 276 S. Water street; the former he gave to his wife, and the latter to his daughter, Mrs. Strather; these stores were destroyed by the fire of October, 1871, and were subsequently rebuilt.  The building contained a stairway in the center, and a partition between the stores back of the stairway. The water closets for the building were at the rear end of the

hall in the second story ; the water pipe, which runs from the basement up the partition in store No. 274, supplied the water closets, and also a sink in the hall over store 276, which was a few feet in front of the water closets.

There was a crank to the rod in the hall for the purpose of shutting off the water from the main pipe, to guard against freezing in a cold night.

In September, 1872, Mrs. Strather died, leaving only one child, Cora, an infant. In January, 1873, Cora having no guardian, appellant directed D. Cole & Sons to lease her property. Under this direction they made a contract with appellee to lease him the first floor and basement from January 15th, 1873, to the 1st of May, 1873, at $75 per month. A lease was prepared and executed by E. D. Taylor, appellant, agent, as a party of the first part, and by appellee as party of the second part. One provision of the lease read as follows : " The said party of the second part is to keep all side-walks in front of the premises in good order, ashes, garbage, and slops of every kind and nature, clear and clean off, and from or about the said premises at his own costs, and also to keep sewer and catch basin clean, so it will carry off the slops and waste water, at his own cost, and in case of any damage caused by leakage of water the said first party shall not be responsible therefor."

The lease also contains this clause: " The second party is not to keep, or cause to be kept, any spirits in said premises, and also to keep the hydrants and pipes, fences and privies and all other parts of the house in good order, free of all costs to said first party during this lease."

The lease also contains a clause that the party of the second part has received the premises in good order and condition, and that he will return them in like good condition.

On the night of the 28th of March, 1873, the water pipe in the hall in the second story of the building burst, which was caused by freezing, and the water went through the ceiling and did the damage to appellee's teas, for which this action is brought.

In the view we take of the record before us, the judgment cannot be sustained, for two reasons.

First — It is apparent that the damage appellee sustained is to be traced to his own negligence or want of ordinary care in not turning off the water when it was liable to freeze and burst the water pipe.

It seems to be clearly established by the proof, by those who were competent to judge, on an examination made in January or February, previous to the accident that caused the damage, that the sink was properly constructed; that the water pipe was of proper size and in good condition, guarded and packed where packing was necessary, and that there was a rod in the hall for the purpose of turning the water off. Under these circumstances we are at a loss to perceive upon what principle negligence or the want of care can be attributed to appellant.

Appellee, as appears from the testimony, had a key to the water closet in the second story of the building, and it was occupied by him. The lease required him to keep it in order. It was an appurtenant to the premises leased, and as the water pipe in that part of the building was constructed for the use and benefit of the water closet, it, too, must be regarded under his control. J. T. Griffiths, a witness for appellant, testified, after the pipes had been packed he went to the plaintiff's store and told him distinctly that there was a place to turn the water off, and to use care in turning it off, as they were liable to be flooded at any time if they did not use care. While it is true this is denied by appellee, yet we see no reason for disregarding the evidence of this witness, who seems to be entirely disinterested.

Under these circumstances we can only attribute the damages sustained to the negligence of appellee. Had he taken the precaution to have used the appliances prepared for his protection and turned off the water, the accident would not have occurred.

But, aside from this question, there is another point fatal to a recovery.

The lease expressly provides, in case of any damage caused by leakage of water, Taylor, appellant, shall not be held responsible.

It is insisted that this clause in the lease must be confined to the basement and first story of the building, which were actually occupied by appellee.

The building was leased to be used as a wholesale tea store. The teas were kept in the first story of the building. We cannot conceive in what manner it was possible for appellee's teas to be liable to damage from leakage that would occur from water in the basement. Such is not possible. From what direction was leakage contemplated by the parties when the lease was executed? Evidently from the second story, as that was the only direction from which water could come which was likely to damage the goods of appellee.

By referring to another provision in the lease, it seems plain that the construction contended for by appellee is not tenable. The lease provides in express terms that the appellee shall keep in good order the hydrants and pipes, privies and all other parts of the house.

There was no privy connected with the premises except the one in the second story of the building. This, then, was the one intended by the parties to be embraced in the lease. The water-pipe which burst was connected with the privy, and that, too, must have been one of the water-pipes intended to be embraced in the lease.

In order to arrive at the intent of the parties, the various provisions of the lease must be considered and compared together. When this is done, a reasonable and fair construction of the lease will not hold appellant responsible for damages occasioned by leakage.

From these views it follows that the Superior Court erred in the instruction given for appellee, and in refusing instructions one, two and seven, which were asked in behalf of appellant, for which the judgment must be reversed and the cause remanded. *Judgment reversed.*

SCOTT, J., dissents.